# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 19-CR-04088-BCW-1 |
| ) | |
| ) | |
| ANTHONY MARTINEZ HARRIS, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant Anthony Martinez Harris' Motion to Suppress. (Doc. 118). In the motion, Mr. Harris claims his *Miranda* waiver was invalid because he was intoxicated. The Government filed suggestions in opposition (Doc. 123), to which Mr. Harris did not reply. The Court held a suppression hearing on December 10, 2020. Because some of Mr. Harris' statements are not subject to *Miranda* scrutiny and the rest were made after a voluntary, knowing, and intelligent waiver of his *Miranda* rights, the Court recommends denying the motion to suppress.

## I. Findings of Fact

On November 13, 2019, Mr. Harris was indicted for possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). (Doc. 1). The charges arise from Mr. Harris's arrest at the Sleep Inn Hotel in Camdenton, Missouri, on September 26, 2019.

On that afternoon, Camdenton Police Officer Nick Thomas was dispatched to the Sleep Inn Hotel after the hotel owner informed law enforcement that an occupant—later identified as Mr. Harris—refused to leave the property. (Tr. 6:18-20, 7:9-11). Upon Officer Thomas' arrival at the hotel, the hotel owner told him that Mr. Harris had been uncooperative in leaving the property after staff members could smell the odor of marijuana coming from Mr. Harris' room. (Tr. 7:2-5, 7:9-11). The owner then escorted Officer Thomas to the fourth floor, where Officer Thomas found hotel staff and Mr. Harris standing in the hall outside his hotel room. (Tr. 7:6-13). Officer Thomas smelled marijuana in the hallway. (Tr. 7:11).

Officer Thomas informed Mr. Harris, in accordance with the owner's wishes, that he needed to collect his belongings and vacate the premises. (Tr. 7:16-22). But because Mr. Harris' keycard to his room had been deactivated, housekeeping staff had to let him into the room to collect his belongings. (Tr. 7:25-8:6). When housekeeping staff propped open the door, Officer Thomas saw in plain sight from his position in the hallway money laid out on the bed and a white powdery substance on the coffee table. (Tr. 8:8-12).

Accordingly, Officer Thomas detained Mr. Harris and called for backup. (Tr. 8:12-14). He then read Mr. Harris his *Miranda* rights. (Tr. 8:16-17). Mr. Harris stated he did not understand his rights and did not know why the officer was reading them to him. (Tr. 9:3-4). Officer Thomas, therefore, further explained to Mr. Harris his *Miranda* rights, elaborating on the right to remain silent and to have counsel. (Tr. 8:4-10). Mr. Harris stated he understood. (Tr. 8:10-12).

Before Officer Thomas could say anything further, Mr. Harris told Officer Thomas that he was involved with the "cartel" and "MS-13." (Tr. 9:18-30). He also offered Officer Thomas $50,000 to let him go. (Tr. 9:13-17). Officer Thomas then asked Mr. Harris if he could search the room. (Tr. 9:21-10:1). Although the record does not clarify whether Mr. Harris granted his consent, Officer Thomas did not conduct a search of the room, instead waiting for backup to arrive. (Tr. 10:2-3).

Camden County Deputy Sheriff Brian Bonner arrived in the hotel's fourth-floor hallway soon thereafter. (Tr. 10:3-4). The two officers had a brief conversation about how to proceed before Deputy Bonner began speaking with Mr. Harris. (Tr. 10:5-6). Deputy Bonner approached Mr. Harris and asked him what was in the room, to which Mr. Harris replied that methamphetamine, cocaine, heroin, and PCP were in the room. (Tr. 10:7-9). Deputy Bonner asked Mr. Harris if the officers could search the room, and Mr. Harris gave his consent to do so. (Tr. 11:1-4).

Accordingly, Officer Thomas conducted a search of Mr. Harris' room, while Deputy Bonner stayed with Mr. Harris, who was seated in a chair inside the room. (Tr. 11:5-9, 24:21-25:10). During the search, Officer Thomas found a large quantity of controlled substances, a set of scales, and some drug paraphernalia. (Tr. 11:11-12). Officer Thomas also found and picked up an object that was wrapped in a piece of camouflage fabric. (Tr. 11:13-14). As Officer Thomas unwrapped the object, Mr. Harris voluntarily told Deputy Bonner that Officer Thomas was holding a bag of C-4. (Tr. 11:16-17, 26:4-9). Officer Thomas then questioned Mr. Harris about what he

was holding, and Mr. Harris reiterated that it was C-4. (Tr. 11:18-21). Officer Bonner also asked Mr. Harris if he had the blasting cap, to which Mr. Harris responded that he did not. (Tr. 26:13-16). The officers immediately exited the room and began evacuating the hotel, while Officer Thomas escorted Mr. Harris to his patrol car and transferred him to the Camden County Jail to be placed on a 24-hour hold. (Tr. 11:23-12:1).

Area Narcotics Group Task Force Officer Brian Pratt arrived at the hotel shortly after Officer Thomas transported Mr. Harris to the jail. (Tr. 35:23-36:5). He discovered that a key to a Kia found in Mr. Harris' pocket matched a Kia located in the hotel parking lot. (Tr. 36:8-11). Officer Pratt investigated the Kia and confirmed that it had been reported stolen by the Kansas City, Missouri, Police Department. (Tr. 36:11-14).

Officer Pratt then conducted searches of Mr. Harris' hotel room and the Kia, pursuant to state-court warrants, finding contraband in both. (Tr. 19:14-16, 36:15-19, 40:16-17). Officer Pratt then met with Mr. Harris in the booking area of the jail sometime in the late evening to provide him with a copy of the search warrants and the search warrant inventory forms. (Tr. 36:19-22, 40:3-4). Officer Pratt began the conversation by advising Mr. Harris of his *Miranda* rights. (Tr. 37:1-3). Although Mr. Harris initially indicated he did want to speak with Officer Pratt, Mr. Harris kept going "back and forth" on whether he wanted to waive his rights. (Tr. 37:5-7, 37:19-22). Because Mr. Harris would not give a straight answer, Officer Pratt did not ask Mr. Harris any questions, instead telling Mr. Harris that the car keys found in his pocket belonged to a car that had been reported stolen. (Tr. 37:8-12). Mr. Harris responded that he did not understand why it had been reported stolen because it was his car. (Tr. 37:12-14).

As discussed, Mr. Harris was indicted two months later for possession with intent to distribute methamphetamine and possession of a firearm in furtherance of a drug trafficking crime. He filed the instant motion to suppress almost a year later—on November 5, 2020.[1] The parties briefed the issue, and, on December 10, 2020, the Court held an evidentiary hearing on the motion.

After hearing testimony from the officers involved in investigating and arresting Mr. Harris, the Court found all officers credible. Although neither Officer Thomas nor Officer Bonner asked Mr. Harris if he was intoxicated, they both testified that based on their training and experience with intoxicated persons, there was no indication that Mr. Harris was intoxicated. (Tr.

---

[1] Mr. Harris filed a similar motion to suppress previously (Doc. 26), which the Court denied without prejudice at the request of different defense counsel. (Docs. 70, 92)

12:18-19, 23:16, 26:23-25). Nor did Mr. Harris ever inform the officers that he was intoxicated. (Tr. 12:9-11, 26:19-20). Moreover, the officers testified that Mr. Harris informed them when he did not understand, complied with their directions, and interacted appropriately with them. (Tr. 12:20-13:2, 25:8-10, 27:1-8). Similarly, Officer Pratt testified that he had significant experience dealing with intoxicated persons, and that he had no inclination Mr. Harris was intoxicated or failed to understand what was going on. (Tr. 37:23-38:8).

## II. Standard

"[*Miranda*] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." *United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). Accordingly, *Miranda* warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda*, 384 U.S. at 444). "Interrogation under *Miranda* includes not only express questioning but also its functional equivalent, such as 'any word or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *United States v. Hull*, 419 F.3d 762, 767 (8th Cir. 2005) (quoting *Rhode Island v. Innis*, 466 U.S. 291, 300–01 (1980)).

A defendant may waive his *Miranda* rights, "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444. Thus, the validity of a *Miranda* waiver requires consideration of two distinct inquiries: (1) whether the waiver was voluntary "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and (2) whether the waiver was knowingly and intelligently made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

"A confession is voluntary if it is 'the product of an essentially free and unconstrained choice by its maker.'" *United States v. New*, 491 F.3d 369, 374 (8th Cir. 2007) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)); *accord Vinton*, 631 F.3d at 482. "In order to determine whether a confession was voluntary, [courts] look to the totality of the circumstances

and must determine whether the individual's will was overborne." *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008) (quotation omitted). "A statement is not considered involuntary unless the police extorted it from the accused by means of coercive activity." *Vinton*, 631 F.3d at 482 (quotation omitted). While "[s]leeplessness, alcohol use[,] and drug use are relevant to [the] analysis, . . . intoxication and fatigue do not automatically render a confession involuntary." *Gaddy*, 532 F.3d at 788 (quotation omitted). Ultimately, "the test is whether these mental impairments caused the defendant's will to be overborne." *Id.* (quotation omitted).

"To make a knowing and intelligent waiver, the defendant must have 'full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *United States v. Gallardo*, 495 F.3d 982, 990 (8th Cir. 2007) (quoting *Moran*, 475 U.S. at 421). Like the voluntariness inquiry, whether a waiver is knowing and intelligent is based on the totality of the circumstances. *Id.* at 990–91. "The government has the burden of proving the validity of the *Miranda* waiver by a preponderance of the evidence." *United States v. Haggard*, 368 F.3d 1020, 1024 (8th Cir. 2004).

### III. Discussion

In his motion, Mr. Harris moves for an order suppressing (1) his statements to Officer Thomas and Deputy Bonner while at the hotel and (2) his statement to Officer Pratt that the Kia belonged to him. He claims these statements were obtained in violation of his constitutional rights because he was so intoxicated that he could not "adequately, voluntarily, knowingly, and intelligently" waive his *Miranda* rights. (Doc. 118 at ¶¶ 4, 7). The Court finds Mr. Harris' arguments unavailing.

    *a.*    *Mr. Harris' statements at the hotel should not be suppressed.*

As an initial matter, Mr. Harris' statements to Officer Thomas that he would pay Officer Thomas $50,000 to let him go and that he was involved with the "cartel" and "MS-13" are not subject to *Miranda* scrutiny because they were made spontaneously and not in response to any attempt by Officer Thomas—through questioning or otherwise—to elicit an incriminating response from Mr. Harris. *See Innis*, 446 U.S. at 300–01 (holding that statements volunteered by persons in custody, but not in response to guilt-seeking questioning, are admissible even in the absence of *Miranda* warnings); *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000) (holding

that spontaneous and voluntary statements do not require suppression). Accordingly, the Court recommends these statements not be suppressed.[2]

That said, three of Mr. Harris' statements while at the hotel are subject to *Miranda* scrutiny: (1) his statement to Officer Thomas that there were no illegal substances in the room; (2) his statement to Officer Thomas that the unidentified object found in the hotel room was C-4; and (3) his statement to Deputy Bonner that illegal drugs were in the hotel room. This Court must, therefore, determine whether Mr. Harris' waiver of his *Miranda* rights was voluntary, knowing, and intelligent in light of any alleged intoxication.

Mr. Harris does not argue that the officers engaged in coercive activity.[3] Instead, he contends that his intoxication rendered his waiver invalid. Mr. Harris, however, provides little evidence that he was under the influence of intoxicating substances, much less explains the severity of his intoxication. To the contrary, the Court finds credible the officers' testimony that Mr. Harris appeared coherent and did not tell them that he was intoxicated or under the influence of drugs. *See Gaddy*, 532 F.3d at 786, 788–89 (upholding a district court's determination that a defendant voluntarily waived his *Miranda* rights because he appeared awake and coherent, acknowledged that he understood his rights, and indicated he wanted to make a statement even though the defendant had not slept the previous night and had consumed pain relievers, muscle relaxers, alcohol, marijuana, and cocaine within 24 hours of waiving his rights).

This testimony is supported by Mr. Harris' behavior before, during, and after his interaction with the officers, which shows he was alert, aware of his criminal liability, and appropriately responding to questions. For example, when Officer Thomas read Mr. Harris his rights for the first time, Mr. Harris articulated that he did not understand his rights and did not understand why he was having them read to him. Officer Thomas, therefore, read Mr. Harris his rights a second time, elaborating on the right to remain silent and to have counsel. After hearing these rights for a second time, Mr. Harris confirmed he understood them.

Mr. Harris also appropriately responded to the few questions he was asked, and his behavior at the hotel was consistent with someone who understood the nature of his crimes.

---

[2] Further, even if the Court were to assume Mr. Harris' spontaneous statements to Officer Thomas were subject to *Miranda* scrutiny (they are not), they would be admissible because Mr. Harris' waiver was voluntary, knowing, and intelligent, as discussed later in this Report and Recommendation.

[3] Nor could he. The record reflects that the officers were professional and straightforward, addressing him in a cordial manner.

Moreover, even if Mr. Harris had a somewhat diminished capacity to resist coercion due to intoxication, "a *Miranda* waiver will not be invalidated on that basis if there is no evidence of police coercion." *Vinton*, 631 F.3d at 483. Here, there was none.

The Court also notes Mr. Harris' extensive criminal history, indicating that he was "familiar with his constitutional rights and that his statements to the police [were] voluntary." *Vinton*, 631 F.3d at 481. Accordingly, based on the totality of the circumstances, the Court concludes that Mr. Harris' waiver of his *Miranda* rights was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421. Put simply, there is no evidence that Mr. Harris' alleged intoxication caused his will to be overborne.

For these same reasons, the Court also finds that Mr. Harris' waiver was knowing and intelligent. Again, the Court credits the officers' testimony that Mr. Harris was coherent and did not appear to be intoxicated. Mr. Harris also complied with directions, maintained conversations with the officers, and was aware of what was going on. Additionally, Mr. Harris' criminal history indicates that he was familiar with and aware of the constitutional rights he was impliedly waiving by speaking with the officers. These circumstances show that Mr. Harris' implied waiver of his *Miranda* rights was knowing and intelligent. The Court therefore recommends finding that any statements to the officers at the hotel should not be suppressed.

   b. *Mr. Harris' statement at the jail should not be suppressed*.

Mr. Harris next argues that his statement to Officer Pratt that the Kia was his must be suppressed. During cross examination of Officer Pratt at the hearing, Mr. Harris implied that this statement should be suppressed because Officer Pratt continued speaking with him after he invoked his *Miranda* rights. To be clear, Mr. Harris did not explicitly make this argument in his briefing or at the hearing, but the Court, out of an abundance of caution, considers it prudent to address it before considering whether Mr. Harris' alleged intoxication requires suppression.

It is undisputed that Mr. Harris was in custody at the time of his conversation with Officer Pratt. And although Officer Pratt did not ask Mr. Harris any questions, the Court finds that his statement that the Kia was reported stolen was its functional equivalent, in that it was reasonably likely to—and did—elicit an incriminating response from Mr. Harris. *Hull*, 419 F.3d at 767. Thus, *Miranda* applies.

The Supreme Court has explained that "[d]uring an interrogation [governed by *Miranda*], '[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.'" *United States v. Adams*, 820 F.3d 317, 322–23 (8th Cir. 2016) (quoting *Miranda*, 384 U.S. at 473–74). The cases after *Miranda*, however, make clear that the invocation of rights must be unequivocal and unambiguous. *See United States v. Davis*, 512 U.S. 452 (1994) (invocation of right to counsel); *Berghuis v. Thompkins*, 560 U.S. 370 (2010) (invocation of right to remain silent). With regard to the right to remain silent, the Eighth Circuit has consistently explained that "'[t]o adequately invoke this right and effectively cut off questioning, a suspect must indicate *a clear, consistent expression of a desire to remain silent*.'" *Adams*, 820 F.3d at 323 (emphasis added) (quoting *United States v. Johnson*, 56 F.3d 947, 955 (8th Cir. 1995)). Courts are to "consider the defendant's statements as a whole to determine whether they indicate an unequivocal decision to invoke the right to remain silent." *Id.* (internal citation and quotations omitted).

In this case, Officer Pratt read Mr. Harris his *Miranda* rights before speaking with him. Although Mr. Harris would not acknowledge that he understood his rights, there is no basis to conclude he did not, especially considering he acknowledged he understood them earlier in the day and had many prior encounters with law enforcement. More importantly, the record does not reflect that Mr. Harris unequivocally invoked his right to remain silent during his brief conversation with Officer Pratt. To the contrary, Officer Pratt testified that after reading Mr. Harris his rights, Mr. Harris indicated he wanted to talk to him but then kept going "back and forth" on that issue. The Eighth Circuit has held that this kind of ambiguity is insufficient to adequately invoke the right to remain silent. *See Adams*, 820 F.3d at 323 (holding the right to remain silent was not unambiguously asserted where the defendant states, "Nah, I don't want to talk, man. I mean, I . . ." before then answering a question). Given the lack of an unequivocal invocation of his rights, the Court finds that Officer Pratt was not required to stop speaking with Mr. Harris, who impliedly waived his rights when he told Officer Pratt that the Kia belonged to him.

Moreover, to the extent Mr. Harris argues that his alleged intoxication invalidated his implied waiver, the Court finds that argument without merit for the same reasons his alleged intoxication at the hotel did not invalidate his waiver. Further, any alleged intoxication at the hotel would have certainly dissipated by the time Mr. Harris spoke with Officer Pratt in the late evening

of November 13, 2019. Accordingly, the Court recommends that Mr. Harris' statement to Officer Pratt should not be suppressed.

## Conclusion

For these reasons, Mr. Harris' arguments regarding evidence suppression in this case are without merit, and the motion to suppress should be denied.

IT IS THEREFORE RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order DENYING Defendant Anthony Martinez Harris' Motion to Suppress. (Doc. 118).

Counsel are reminded that each party has fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 14th day of December, 2020, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge