## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-CR-4088-BCW-01 |
| | ) | |
| ANTHONY MARTINEZ HARRIS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court are what this Court construes as *pro se* Defendant Anthony Martinez Harris's (1) motion to dismiss indictment, (2) motion to revoke detention order, and (3) objection to the Report and Recommendation regarding evidence suppression. (Docs. 155, 159). No opposition brief was filed by the United States. A hearing was conducted on March 9, 2021, via video teleconference with the consent of the parties. The matters are now ripe for consideration. For the reasons that follow, it is recommended that the motion to dismiss indictment and motion to revoke detention order be denied, and the objection to the Report and Recommendation regarding evidence suppression be overruled.

## I. Background

On the afternoon of September 26, 2019, Camdenton, Missouri police officer Nick Thomas responded to the Sleep Inn & Suites Lake of the Ozarks at the request of hotel staff to help remove a hotel guest from the property. (Docs. 10, 131). Upon Officer Thomas's arrival, the hotel owner reported that Anthony Harris had been uncooperative in vacating the property after being asked to do so by staff members who could smell the odor of marijuana coming from his room. *Id.* The owner escorted Officer Thomas to the fourth floor where hotel staff and Mr. Harris standing in the

hallway outside his hotel room. (Doc. 131). Officer Thomas informed Mr. Harris, in accordance with the owner's wishes, that he needed to collect his belongings and leave the premises. *Id*. But because Mr. Harris's keycard to his room had been deactivated, housekeeping staff had to let him into the room to collect his belongings. *Id*. When housekeeping staff propped open the door, Officer Thomas saw in plain sight money scattered across the bed and a white powdery substance on the coffee table. *Id*. Accordingly, Officer Thomas detained Mr. Harris and called for backup. *Id*.

Officer Thomas then read Mr. Harris his *Miranda* rights. Before Officer Thomas could say anything further, Mr. Harris told him that he was involved with the "cartel" and "MS-13." (Docs. 10, 131). He also allegedly offered Officer Thomas $50,000 to let him go. *Id*. Officer Thomas asked Mr. Harris if he could search the room. Although the record does not clarify whether Mr. Harris granted his consent, Officer Thomas did not conduct a search of the room at that time and instead waited for backup to arrive.

Camden County Deputy Sheriff Brian Bonner arrived in the hotel's fourth-floor hallway soon thereafter. The two officers had a brief conversation about how to proceed before Deputy Bonner began speaking with Mr. Harris. Deputy Bonner approached Mr. Harris and asked him what was in the room. Mr. Harris allegedly replied that methamphetamine, cocaine, heroin, and PCP were in the room. *Id*. Deputy Bonner asked Mr. Harris if the officers could search the room, and Mr. Harris gave his consent to do so. *Id*.

Officer Thomas led the search of Mr. Harris's room, while Deputy Bonner stayed with Mr. Harris who was seated in a chair inside the room. During the search, Officer Thomas found a large quantity of controlled substances, a set of scales, and some drug paraphernalia. Officer Thomas then picked up a clay-like object that was covered in a bandana. (Docs. 6 and 10). As the officer

was inspecting the object, Mr. Harris allegedly said, "That's C-4." *Id*. Deputy Bonner asked Mr. Harris if he had the blasting cap, to which Mr. Harris responded that he did not. The officers immediately exited the room and began evacuating the hotel while Officer Thomas escorted Mr. Harris to his patrol car and transferred him to the Camden County Jail to be placed on a 24-hour hold. The hotel remained unoccupied until the building was declared safe by the explosives ordinance team. (Doc. 6).

Area Narcotics Group Task Force Officer Brian Pratt arrived at the hotel shortly after Officer Thomas transported Mr. Harris to the jail. He discovered that a key to a Kia found in Mr. Harris's pocket matched a Kia located in the hotel parking lot. (Docs. 10, 131). Officer Pratt investigated the Kia and confirmed that it had been reported stolen by the Kansas City, Missouri Police Department. Officer Pratt then conducted searches of Mr. Harris's hotel room and the Kia, pursuant to state-court warrants, finding contraband in both. The searches yielded 756 grams of crystal methamphetamine, approximately 581 ecstasy pills, and lesser quantities of heroin, cocaine, and PCP. (Doc. 6). Also, the searches revealed three handguns, a .223 semi-automatic rifle, ammunition, various drug paraphernalia, and $11,259 in U.S. currency. *Id*.

An indictment was filed by a federal grand jury on November 13, 2019, charging Mr. Harris with possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count One), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two). (Doc. 1).

On November 13, 2019, Mr. Harris's case was assigned to United States District Judge Brian C. Wimes and referred to the undersigned who is designated to hear and determine all pretrial motions or matters filed, except (1) a motion to dismiss or quash the indictment, and (2) a motion

to suppress evidence, in accordance with the provisions of 28 U.S.C. § 636(b)(1)(A). (Doc. 2). The undersigned also is designated to hear and process all pretrial motions to (1) dismiss or quash the indictment, and (2) suppress evidence filed in accordance with the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (b)(1)(C). *Id*.

For over a year, Mr. Harris was represented by appointed counsel. He then filed a *pro se* Motion for Self-Representation that was granted following a *Faretta* hearing. (Docs. 147, 151). Since February 11, 2021, Mr. Harris has proceeded *pro se*.

## II. Discussion

### A.     Motion to Dismiss Indictment Should Be Denied

Mr. Harris's motion to dismiss indictment is actually captioned as a "Motion Pro Se for Writ of Habeas Corpus," which requests habeas relief pursuant to 28 U.S.C. § 2241. The Court construes the pleading as a motion to dismiss indictment because habeas corpus is not a remedy instantly available to pretrial detainees.[1] In the interest of judicial economy, courts routinely decline to consider habeas petitions under 28 U.S.C. § 2241 that raise claims that should properly be raised on pretrial motion. See *Whitmer v. Levi*, 276 Fed. Appx. 217, 219 (3rd Cir. 2008) ("Where a defendant is awaiting trial, the appropriate vehicle for violations of his constitutional rights are pretrial motions or the expedited appeal procedure provided by the Bail Reform Act, 18 U.S.C. § 3145(b), (c), and not a habeas corpus petition."); *Orasco v. Koonce*, 2020 U.S. Dist. LEXIS 82379 at *4 (E.D. Mo. May 11, 2020) (dismissing the habeas petition of a pretrial detainee who did not show "any basis to bypass the normal procedure for raising such claim"); *Watson v. United States*, 2012 U.S. Dist. LEXIS 137336 at *6 (E.D. Mich. Sept. 25, 2012); *Varner v. United States*, 2010

---

[1] "A document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ((quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

U.S. Dist. LEXIS 140867 at *4-5 (D. Minn. Dec. 1, 2010) ("Federal courts have consistently held that a federal criminal defendant who seeks to challenge some aspect of an ongoing federal criminal prosecution must bring his claims in the criminal case itself." (citing *Jones v. Perkins*, 245 U.S. 390 (1918)).

Mr. Harris contends his indictment should be dismissed due to his alleged delayed appearance before a magistrate judge, due to the absence of a probable cause hearing or preliminary hearing, and due to allegedly having no legal representation at the pretrial stage of these proceedings.

### 1. Defendant was Brought Before U.S. Magistrate Judge Without Delay

Mr. Harris claims he was arrested and "illegally held for 56 days" before he was brought before a U.S. Magistrate Judge, and "illegally indicted after 48 days in jail without a proper probable cause hearing" and "without a preliminary examination." (Doc. 155); (Tr. 20:6-10). The Court interprets the *pro se* motion as an alleged violation of Federal Rule of Criminal Procedure 5(a)(1)(A).

Rule 5(a)(1)(A) provides that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge." "Rule 5(a) applies only to persons arrested and held under federal law." *United States v. Elliott*, 435 F.2d 1013, 1015 (8th Cir. 1970). Although Rule 5 does not apply where the defendant "has been arrested by local authorities and is in their sole custody," it may apply in the absence of a federal arrest "when there is evidence indicating that the arrest and detention by the state official were at the request of federal authorities or for the purpose of assisting them." *United States v. Jarrett*, 423 F.2d 966, 971 (8th Cir. 1970) (first passage quoting *Tucker v. United States*, 375 F.2d 363, 370 (8th Cir. 1967)); *see also United States v. Jeanetta*, 533 F.3d 651, 656 (8th Cir. 2008) (noting Rule 5(a) applies to a

person in local custody where "the state officers are acting at the direction of or in concert with the federal officers, or there is collaboration between the federal and state authorities" (quoting *United States v. Morris*, 445 F.2d 1233, 1236 (8th Cir. 1971))).

When Mr. Harris was arrested on September 26, 2019, he was taken into state custody on state charges until he was transferred by a federal arrest warrant to federal custody on November 21, 2019. (Doc. 5). The only arguable bases on which his arrest could trigger Rule 5(a), then, are (1) if the execution of the warrant at the time of Mr. Harris's arrest rendered it a federal arrest; or (2) if the state and local officers were acting at the direction of or in order to assist federal authorities. Mr. Harris denied any federal involvement in his arrest at the March 9, 2021 hearing. (Tr. 20:15-16). Regardless, the Court need not decide whether Rule 5(a) applies to Mr. Harris's circumstances. The purpose of that rule is to "frustrate law-enforcing officers from detaining the arrested person for an unnecessary period of time to enable the officer to extract a confession from the arrested individual." *Jeanetta*, 533 F.3d at 656 (quoting *Morris*, 445 F.2d at 1236). Accordingly, the appropriate remedy for a violation of Rule 5(a)(1)(A) is not dismissal of an indictment, but suppression of evidence illegally obtained as a result of the violation. See *United States v. Chavez*, 705 F.3d 381, 385–86 (8th Cir. 2013). Mr. Harris points to no such evidence, arguing instead that the period in state custody was mentally challenging.

> I was -- I could say I was mentally tortured. For me to be an American, to be -- I was involuntarily intoxicated is my claim. I was mentally tortured. I was arrested in the hallway and not asked anything. I was involuntarily intoxicated and I was not asked anything. I was taken to jail, put in jail. I was –

(Tr. 20:24-21:4). Further, Mr. Harris argues that the period in state custody prejudiced him by delaying appointment of counsel, which deprived counsel of adequate time to prepare for trial. (Tr. 21:5-19). The Court has not been directed to any authority suggesting that this is a sort of prejudice addressed by Rule 5(a). Further, Mr. Harris's trial date was continued at his request numerous

times to allow defense counsel adequate time to fully investigate the case and adequately prepare for trial. Mr. Harris's appearance before a magistrate judge was not delayed. He was not prejudiced by any period of delay and has not identified any available remedy for a supposed violation of Rule 5. Accordingly, it is recommended that the motion to dismiss the indictment be denied.

### 2. Grand Jury Conclusively Found Probable Cause to Indict Defendant

Mr. Harris asserts he "was illegally indicted after 48 days in jail without a proper probable cause hearing" and "without a preliminary examination." (Doc. 155). He is seeking to dismiss his indictment on the grounds that the Grand Jury lacked probable cause to indict. (Tr. 23:3-12). He states an indictment "without a probable cause determination made by a U.S. Magistrate Judge" equates to malicious prosecution. (Doc. 155); (Tr. 23:3-12). The Supreme Court of the United States, surveying nearly a century of its own precedent, has explained:

> This Court has often recognized the grand jury's singular role in finding probable cause necessary to initiate a prosecution for a serious crime. An indictment fair upon its face, and returned by a properly constituted grand jury, we have explained, conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged. And conclusively has meant, case in and case out, just that. We have found no authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof. To the contrary, the whole history of the grand jury institution demonstrates that a challenge to the reliability or competence of the evidence supporting a grand jury's finding of probable cause will not be heard. The grand jury gets to say−without any review, oversight, or second-guessing−whether probable cause exists to think that a person committed a crime.

*Kaley v. United States*, 134 S. Ct. 1090, 1097−98 (2014) (quotations, citations, and alterations omitted). A grand jury has conclusively found probable cause to indict Mr. Harris for possession with intent to distribute methamphetamine and possession of a firearm in furtherance of a drug trafficking crime. While he can challenge the sufficiency of the evidence to prove his guilt at trial,

he cannot challenge the grand jury's probable cause determination or otherwise seek dismissal of the indictment based on his personal views as to what the government's evidence will ultimately prove. See *Costello v. United States*, 350 U.S. 359, 409 (1956) ("An indictment returned by a legally constituted and unbiased grand jury ... is enough to call for trial of the charge on the merits."); *United States v. Nelson*, 165 F.3d 1180, 1182 (8th Cir. 1999) ("It has long been settled that an indictment is not open to challenge on the ground that there was inadequate or insufficient evidence before the grand jury."); *United States v. Ferro*, 252 F.3d 964, 967 (8th Cir. 2001) (explaining that "federal criminal procedure does not provide for a pre-trial determination of sufficiency of the evidence" or for "dismissal of an indictment on the basis of predictions as to what the trial evidence will be" because "[t]he government is entitled to marshal and present its evidence at trial"). Furthermore, given this case has been prosecuted via indictment and not by information, a preliminary hearing under the rules is not necessary, as Mr. Harris seems to suggest. See Fed. R. Crim. P. Rule 5.1(a)(2); *United States v. Ortiz-Martinez*, 188 Fed. Appx. 530, 531 (8th Cir. 2006) (Defendant was indicted "and therefore was not entitled to a preliminary hearing."); *United States v. Rose*, 541 F.2d 750, 753 n. 2 (8th Cir. 1976). Therefore, Mr. Harris's motion to dismiss the indictment should be denied.

### 3. Defendant was Provided Legal Representation at Pretrial Stage

Mr. Harris "alleges that he was not offered representation at the critical stages of pretrial" in violation of his Sixth Amendment rights. (Doc. 155); (Tr. 24:24-25:3). Yet, the records suggest otherwise. In fact, Mr. Harris had been represented by counsel from November 2019, when he was taken into federal custody, until he filed a motion to represent himself that was granted on February 11, 2021. (Doc. 151).

On November 22, 2019, Steven Berry, an Assistant Federal Public Defender, was appointed to represent Mr. Harris. (Doc. 8); (Tr. 25:6-26:1). That same day, an initial appearance and arraignment were held. Mr. Harris entered pleas of not guilty. (Doc. 8). The case was set on the January 2020 trial docket. Mr. Harris requested a continuance to the February 2020 trial docket. The Court granted the motion to continue trial.

On November 25, 2019, a Detention Hearing was held. (Doc. 12). At that hearing, the Court granted the government's motion to detain, finding by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community. (Doc. 11).

On December 10, 2019, Mr. Berry filed a motion to withdraw as defense counsel due to "a conflict of interest in this matter." (Doc. 14). On December 11, 2019, the Court granted Mr. Berry's motion to withdraw and appointed Jeffrey R. Kays as defense counsel under the Criminal Justice Act. (Doc. 15). On January 13, 2020, Mr. Harris filed a motion to continue trial to June 1, 2020. (Doc. 17). The Court granted the motion on January 14, 2020. (Doc. 18).

On January 28, 2020, Mr. Harris filed his first *pro se* correspondence directly with the Court, despite being represented by defense counsel. (Doc. 19). Mr. Harris requested the Court to reconsider the issue of bond, complained about the difficulty of contacting his lawyer, alleged he was recently raped by "an inmate," complained about the general conditions of Phelps County Jail, stated that he is not a felon and does not have a criminal record, and denied that he had anything to do with the hotel room at the center of his federal criminal case. *Id*. The Court held a status conference to take up Mr. Harris's issues on February 11, 2020. (Doc. 22). The Court found no merit to Mr. Harris's complaints. Mr. Harris then moved through counsel for a new trial setting

of April 20, 2020, and requested that no more continuances be granted in his case. *Id*. The Court granted the motion and issued a new scheduling and trial order. (Doc. 23).

On March 23, 2020, Mr. Harris through counsel filed a motion to suppress (Doc. 26) and a motion to continue trial to July 6, 2020 (Doc. 27). The Court granted the motion to continue trial that very same day. (Doc. 28).

On March 27, 2020, Mr. Harris filed his second *pro se* correspondence with the Court requesting Chief Judge Beth Phillips "freeze" his case and "stop" his trial due to COVID-19. (Doc. 29). He asked to be released from custody and wrote, "I am asking to go home and having my trial set off." *Id*. He further stated:

> I wish to stand trial for what the United States of America has charged me with, but this COVID-19 has jumped out and it is taking loved one's, so I ask you as a Christian person to please set my case off and allow me to go home and find out about my son's and grandbaby's I don't even know if they are boy or girl grandbaby's. Also my oldest aunt is out of California, Maxine Milner, she has passed, but all my first cousin are in California, I would love to be able to call, and check on them, and give them words of encouragement in a time of need.

*Id*. The Court, on March 31, 2020, denied the motion for release from custody and stated, "Defendant is represented by counsel. As a result, Defendant must address the Court through his attorney. If defense counsel feels that relief is warranted, he or she shall file the appropriate motion." (Doc. 30).

On April 3, 2020, Mr. Harris filed his third *pro se* correspondence, a 12-page motion directed to U.S. District Judge Brian C. Wimes requesting a speedy trial, requesting new counsel, and requesting other relief. (Doc. 31). On April 7, 2020, Mr. Kays filed a motion to withdraw (Doc. 35) as defense counsel citing the April 3, 2020 correspondence Mr. Harris sent to the Court which stated Mr. Kays "is not doing his job, that we are not seeing eye to eye about my case." Given the allegation of ineffective assistance of counsel, Mr. Kays wrote that he could no longer

effectively represent Mr. Harris. *Id.* On April 9, 2020, Mr. Harris filed his fourth, fifth, and sixth *pro se* correspondence with the Court claiming he is being detained illegally, that his Speedy Trial rights have been violated, and that he desires new defense counsel. (Docs. 36, 36-1, and 36-2). On April 14, 2020, Mr. Harris filed his seventh *pro se* correspondence which is captioned as a "Motion to Dismiss Indictment." (Doc. 37). The very same day, the Court denied without prejudice and stated, "Defendant is represented by counsel. As a result, Defendant must address the Court through his attorney. If defense counsel feels that relief is warranted, he shall file the appropriate motion." (Doc. 38).

On April 20, 2020, Mr. Harris filed his eighth *pro se* correspondence with the Court, this time requesting a bond reconsideration hearing. (Doc. 40). The Court denied noting "Defendant is represented by counsel. As a result, Defendant must address the Court through his attorney. If defense counsel feels that relief is warranted, he shall file the appropriate motion." (Doc. 41). On April 21, 2020, the Court held an *ex parte* status conference with Mr. Harris and counsel. After discussions with defendant and counsel, the Court denied defendant's motion for new counsel. (Doc. 42). Mr. Harris and his counsel agreed to continue to work together. Accordingly, the Court found three pending motions to be moot: the *pro se* motion for Speedy Trial (Doc. 31), *pro se* motion for new counsel (Doc. 33), and motion to withdraw as attorney by Mr. Jeffrey Kays (Doc. 35).

On May 5, 2020, Mr. Harris again requested new counsel and the Court granted the request by appointing Mr. Scott Hamblin. (Docs. 52 and 53). Mr. Hamblin withdrew from this case on May 13, 2020, after he "discovered that he has a conflict of interest." (Docs. 58, 59). The Court then appointed Mr. Ben Faber on May 14, 2020. (Doc. 60). On May 15, 2020 and June 1, 2020, Mr. Harris filed his ninth and tenth *pro se* correspondence claiming poor dental care (Doc. 61) and

requesting a change of venue (Doc. 65). Through new counsel, on June 2, 2020, Mr. Harris moved to continue trial to March 22, 2021 (Doc. 62), and to continue the suppression hearing (Doc. 63). The Court denied Mr. Harris's *pro se* request for change of venue, noting "Defendant is represented by counsel. As a result, Defendant must address the Court through his attorney. If defense counsel feels that relief is warranted, he shall file the appropriate motion." (Doc. 68). On June 5, 2020, the Court granted the motion to continue trial (Doc. 67) and motion to continue the suppression hearing (Doc. 69).

On June 5, 2020, the Court also issued a Report and Recommendation on Mr. Harris's motion to suppress statements (Doc. 26), recommending that the district court deny the motion without prejudice. (Doc. 70). The Court explained that Mr. Faber requested a denial without prejudice, with Mr. Harris's agreement, at the June 5, 2020 status conference, as he had only received discovery June 2, 2020 and "required time to review discovery and consider how to properly proceed with the pending motion." *Id.*. The district court adopted the Court's Report and Recommendation on September 15, 2020, denying without prejudice the motion to suppress statements. (Doc. 92).

On June 15, 2020, Mr. Harris filed his eleventh *pro se* correspondence, expressing his intent to proceed with "my pro se motion [and] also my motion to dismiss the indictment." (Doc. 71). In response, the Court set a status conference for June 30, 2020. (Doc. 72). On June 16, 2020, Mr. Harris filed his twelfth *pro se* correspondence, alleging excessive force by a Sergeant Lotis, denial of medical care, and inattentiveness on the part of his attorney. (Doc. 73).

On June 29, 2020, Mr. Harris filed his thirteenth *pro se* correspondence, further expressing dissatisfaction with counsel and moving for *pro se* status. (Docs. 74 and 75). The Court terminated the motion on June 30, 2020, pursuant to its status conference the same day. (Doc. 76). On July

7, 2020, Mr. Harris filed his fourteenth *pro se* correspondence, alleging that his continued detention was unconstitutional and expressing dissatisfaction with his representation. (Doc. 78). The Court held another status conference on July 21, 2020 (Doc. 79) and appointed new counsel, John M. Roodhouse. (Doc. 80).

On July 30, 2020, Mr. Harris filed his fifteenth *pro se* correspondence, which included a motion to suppress and allegations of Speedy Trial Act violations. (Doc. 81). The Court denied the motion without prejudice that same day, noting "Defendant is represented by counsel. As a result, Defendant must address the Court through his attorney. If defense counsel feels that relief is warranted, he shall file the appropriate motion." (Doc. 82).

On August 1, 2020, Mr. Harris filed his sixteenth *pro se* correspondence, requesting release from custody due to alleged Fourth and Fifth Amendment violations with respect to his arrest and questioning. (Doc. 83). Mr. Harris's seventeenth *pro se* correspondence followed closely on its heels on August 3, 2020, again alleging multiple constitutional violations, requesting assignment of a new magistrate judge, stating that he had not yet heard from Mr. Roodhouse, and asking for the name of the person who transported him from Camden County Jail to Jefferson City on November 21, 2019. (Doc. 84). In response, the Court set a status conference for September 29, 2020. (Doc. 85).

On August 7, 2020, Mr. Harris filed his eighteenth *pro se* correspondence, a motion to vacate pursuant to 28 U.S.C. § 2255. (Docs. 86, 87). U.S. District Judge Brian C. Wimes dismissed the motion without prejudice as premature on August 14, 2020, explaining that 28 U.S.C. § 2255 "provides relief only to prisoners who are 'in custody <u>under sentence</u> of a court established by Act of Congress.'" (Doc. 88 (quoting 18 U.S.C. §2255(a))).

On August 16, 2020, Mr. Harris filed his nineteenth *pro se* correspondence, requesting a status conference to address his claims that "[t]he critical stage of my pretrial stages have went by" and "if not for counsel's unprofessional errors, I would be on pretrial release right now." (Doc. 89). Ten days later, on August 26, 2020, Mr. Harris filed his twentieth and twenty-first *pro se* correspondence. (Docs. 90, 91). The first letter asserted the need for medical attention—namely consultation with a psychiatrist and treatment for his eye—and dissatisfaction with counsel. (Doc. 90). The second letter, which was four pages long, alleged Speedy Trial Act and constitutional violations, and detailed alleged interactions with all of his prior attorneys. (Doc. 91). On September 16, 2020, Mr. Harris filed his twenty-second *pro se* correspondence, a "Motion Pro Se to Dismiss Indictment," reasserting claims of Fourth, Fifth, and Sixth Amendment violations. (Doc. 93). The Court denied without prejudice, noting "Defendant is represented by counsel. As a result, Defendant must address the Court through his attorney. If defense counsel feels that relief is warranted, he shall file the appropriate motion." (Doc. 96).

On September 21, 2020, Mr. Harris filed his twenty-third *pro se* correspondence entitled "Motion for Ancillary Suit Filing Paperwork." (Doc. 95). The motion requested "the necessary paperwork to properly address" several individuals alleged to have violated Mr. Harris's constitutional rights. *Id*. The Court denied without prejudice, noting "Because this case has not yet been adjudicated, Defendant's requests related to ancillary proceedings are premature. Additionally, Defendant is represented by counsel. As a result, Defendant must address the Court through his attorney. If defense counsel feels that relief is warranted, he shall file the appropriate motion." (Doc. 97).

On September 28, 2020, Mr. Harris filed his twenty-fourth and twenty-fifth *pro se* correspondence, a "Motion Pro Se for Statute limitations" (Doc. 98) and "Motion Pro Se for Status

Conference" (Doc. 99). The motion "for Statute limitations" again alleged that Mr. Harris's pretrial detention was of unlawful duration. (Doc. 98). The motion requesting a status conference alleged that Mr. Harris "was not inform[ed] of or gave consent on" (a) this Court's Report and Recommendation (Doc. 70) recommending dismissal without prejudice of Mr. Harris's suppression motion (Doc. 26), and (b) the district court's adoption of the Report and Recommendations (Doc. 92). The motion stated that Mr. Harris "will be objecting on the Report and Recommendation of Magistrate Judge Willie J. Epps, Jr., and also motioning pro se for summary judgment." (Doc. 99). The Court denied both motions without prejudice that very same day, noting "Defendant is represented by counsel. As a result, Defendant must address the Court through his attorney. If defense counsel feels that relief is warranted, he shall file the appropriate motion." (Doc. 100).

The Court held a status conference on September 29, 2020. (Doc. 101). At the status conference, the Court denied Mr. Harris's oral motion for bond and instructed him "to follow defense counsel's instructions and allow counsel to file motions on his behalf." *Id.* The Court reminded Mr. Harris that he "should address the Court through counsel" and "CJA appointed counsel is representing defendant in case number 2:19-cr-4088-BCW-01 only." *Id.*

On October 8, 2020, Mr. Harris filed his twenty-sixth *pro se* correspondence requesting that the Eighth Circuit review the denial of his *pro se* motion to reconsider detention. (Doc. 102). On October 16, 2020, Mr. Harris filed his twenty-seventh and twenty-eighth *pro se* correspondence, alleging denial of medical care (Doc. 103) and Sixth Amendment rights (Doc. 104). The Court denied without prejudice the motion alleging violation of Sixth Amendment rights that same day, noting "Defendant is represented by counsel. As a result, Defendant must address

the Court through his attorney. If defense counsel feels that relief is warranted, he or she shall file the appropriate motion." (Doc. 106).

On October 27, 2020, Mr. Harris filed his twenty-ninth, thirtieth, and thirty-first *pro se* correspondence, a motion for summary judgment (Doc. 107) and a "Motion for 28 U.S.C. § 2254" (Docs. 108, 110). The Court denied without prejudice the motion for summary judgment that same day, noting "Defendant is represented by counsel. As a result, Defendant must address the Court through his attorney. If defense counsel feels that relief is warranted, he or she shall file the appropriate motion." (Doc. 109). The Court denied the motion citing to 28 U.S.C. § 2254 the next day, October 28, 2020, again noting that Mr. Harris was represented by counsel and must address the Court through his attorney (Doc. 111).

On October 31, 2020, Mr. Roodhouse filed a motion for release from custody on Mr. Harris's behalf. (Doc. 112). That same day, Mr. Roodhouse filed a motion to schedule an evidentiary hearing to address both the motion for release from custody and Mr. Harris's earlier Motion to Suppress Statements. (Doc. 113). On November 2, 2020, the Court denied the motion for release from custody, finding that the changed circumstances cited in the motion "do not warrant reconsideration or a hearing given the reasons noted in the Court's Order of Detention Pending Trial" (Doc. 114 (citing Doc. 11)), and denied the motion to schedule a suppression hearing, explaining that "[t]here is no motion to suppress pending in this case" (Doc. 115).

On November 2, 2020, Mr. Harris filed his thirty-second *pro se* correspondence requesting that additional defense counsel be added to his case. (Doc. 116). The Court denied the request the next day, November 3, 2020, explaining that "[t]he Court specifically finds current counsel is able to handle the charges pending against Defendant." (Doc. 117).

On November 5, 2020, Mr. Roodhouse filed a Motion to Suppress Statements on Mr. Harris's behalf. (Doc. 118). In response, the Court set a suppression hearing for December 10, 2020. (Doc. 122).

On November 9, 2020, Mr. Harris filed his thirty-third and thirty-fourth *pro se* correspondence, four-page motions reasserting numerous prior claims as to alleged violations of the Federal Rules of Criminal Procedure, the Speedy Trial Act, and the United States Constitution. (Docs. 119, 120). The Court denied these motions that same day, noting "Defendant is represented by counsel. As a result, Defendant must address the Court through his attorney. If defense counsel feels that relief is warranted, he or she shall file the appropriate motion." (Doc. 121).

On November 23, 2020, Mr. Harris filed his thirty-fifth *pro se* correspondence, a motion for a Franks hearing, which appears to allege that police officers made false representations that Mr. Harris consented to a search of his hotel room. (Doc. 124). The Court denied the motion without prejudice, noting "Defendant is represented by counsel. As a result, Defendant must address the Court through his attorney. If defense counsel feels that relief is warranted, he or she shall file the appropriate motion." (Doc. 125).

On December 10, 2020, the Court held both a status conference and a suppression hearing. (Docs. 128, 129). At the status conference, Mr. Roodhouse "agree[d] to address the Court with written motions." (Doc. 128). The government presented three witnesses at the suppression hearing, each of whom was questioned by the Assistant United States Attorney and cross-examined by Mr. Roodhouse. (Doc. 130 at 4-43). After the questioning and government's closing statement, Mr. Roodhouse delivered a closing statement, arguing for suppression. *Id.* at 45-48. Once the hearing concluded, Mr. Harris addressed the Court stating that he required urgent medical attention for his eye. *Id.* at 48-49. The Court instructed chamber's staff to consult with the U.S.

Marshal regarding Mr. Harris's health concern and to report findings. *Id.* at 49-50. The Court issued its Report and Recommendation on December 14, 2020, recommending that the Court deny the Motion to Suppress Statements. (Doc. 131). At this time, the Court has not yet issued its ruling on the pending Motion to Suppress.

On December 21, 2020, Mr. Harris filed his thirty-sixth *pro se* correspondence, a "Motion Pro-Se for Causal Challenge." (Doc. 132). First, the motion alleged "deprivation of medical care," asserting that "deprivation of medical care" was part of an open case in the Eastern District of Missouri and alleging delays in treatment for his eye. *Id.* Second, the motion reasserted numerous constitutional claims under the Fourth, Sixth, and Fourteenth Amendments. *Id.* That same day, December 21, 2020, Mr. Harris filed his thirty-seventh and thirty-eighth *pro se* correspondence. The thirty-seventh was a motion further alleging Fourth and Fourteenth Amendment violations as to his arrest and pretrial proceedings. (Doc. 133). The thirty-eighth was a motion for status conference asking the court to "let him present… Brady material to the court by way of video A.S.A.P" because Mr. Roodhouse allegedly told him that the Court "[had] not read my case, you have look at only what the prosecution offered." (Doc. 134). The Court denied all three motions, Docs. 132-34, without prejudice the day they were filed, noting "Defendant is represented by counsel. As a result, Defendant must address the Court through his attorney. If defense counsel feels that relief is warranted, he or she shall file the appropriate motion." (Doc. 135).

On December 24, 2020, Mr. Roodhouse filed a motion requesting extension of time to file objections to the Court's Report and Recommendation on Mr. Harris's Motion to Suppress Statements until January 11, 2021. (Doc. 136). The Court granted this motion on December 29, 2020. (Doc. 137). On January 6, 2021, Mr. Roodhouse filed an objection to the Court's Report and Recommendation. (Doc. 138). Mr. Harris followed up with his own *pro se* objection to the

Report and Recommendation on January 11, 2021. (Docs. 139, 140).[2]  This was his thirty-ninth *pro se* correspondence.  The Court terminated Mr. Harris's objection that same day, January 11, 2021.

On January 15, 2021, Mr. Harris filed his fortieth and forty-first *pro se* correspondence, a request for a status conference (Doc. 141), and a request for case records in order to petition the U.S. Court of Appeals for the Eighth Circuit for review (Doc. 143).  The Court denied without prejudice the request for a status conference on January 15, 2021, and the request for case records on January 21, 2021, noting in both instances that "Defendant is represented by counsel. As a result, Defendant must address the Court through his attorney. If defense counsel feels that relief is warranted, he or she shall file the appropriate motion." (Docs. 142, 144).

On January 28, 2021, Mr. Harris filed his forty-second *pro se* correspondence, a motion to represent himself entitled "Motion for a Pro Persona, Due to Right of Entry for Condition Broken." (Doc. 145).  In response, the Court set a status conference for February 4, 2021.  Mr. Roodhouse followed up with a motion for self-representation on Mr. Harris's behalf on February 1, 2021. (Doc. 147).  The Court held the status hearing on February 4, 2021, at which time Mr. Harris affirmed his desire to represent himself and proceed with a *Faretta* hearing. (Doc. 148).

The Court held the *Faretta* hearing on February 11, 2021. (Doc. 150).  The Court inquired into Mr. Harris's age, education, physical and mental condition, and familiarity with the rules and procedures with which he would be expected to comply as a *pro se* defendant. *Id.*.  The Court then advised Mr. Harris of the difficulty of self-representation and encouraged him to proceed with appointed counsel. *Id.*  Both Special Assistant United States Attorney Aaron Jolly and Mr. Roodhouse expressed that they had no concerns with respect to Mr. Harris's mental competency.

---

[2] Docs. 139 and 140 appear to be a single document, with the last page uploaded to the Electronic Case Files system separately from the first two pages.

*Id.* In light of the information adduced at the hearing, the Court found that Mr. Harris had knowingly and voluntarily waived his right to counsel. *Id.* Accordingly, the Court issued an Order on February 11, 2021, granting Mr. Harris's request to represent himself and appointing Mr. Roodhouse as standby counsel. (Doc. 151).

In sum, despite being represented by counsel from the earliest stages of this litigation until just recently, Mr. Harris continually has filed *pro se* correspondence over disagreements with his prior counsel's strategic decisions and this Court's orders. Further, in the course of these proceedings, Mr. Harris has expressed dissatisfaction with counsel and attempted to quarterback his defense with *pro se* motions on a great many occasions, he has never been denied representation. Since Mr. Harris has been represented at every stage of these proceedings until he elected to proceed *pro se* (Tr. 24:24-28:14), Mr. Harris's motion to dismiss the indictment should be denied.

## B. Defendant's Motion to Revoke Detention Order Should Be Denied

Mr. Harris's motion to revoke the undersigned's detention order is raised in his pleading captioned "Motion Pro Se for Writ of Habeas Corpus," which requests revocation of detention pursuant to 18 U.S.C. § 3145. (Doc. 155); (Tr. 28:19-29:14). The Court construes this part of Mr. Harris's motion as a pretrial motion to revoke bond because habeas corpus is not a remedy instantly available to pretrial detainees. As discussed above, in the interest of judicial economy, courts routinely decline to consider habeas petitions under 28 U.S.C. § 2241 that raise claims that should properly be raised on pretrial motion or by the appeal procedure provided by the Bail Reform Act, 18 U.S.C. § 3145.

On November 25, 2019, a detention hearing was held. (Doc. 12). At the hearing, the Court granted the government's motion to detain, finding by clear and convincing evidence that no

condition or combination of conditions of release would reasonably assure the safety of any other person and the community. (Doc. 11). The Court specifically found:

> (1) The nature of the instant offense alleges Defendant possessed cocaine, methamphetamine, heroin, marijuana, Oxycodone, an AR-15 style rifle, and $11,259 in U.S. currency. (2) Defendant has an extensive criminal history dating to 1991. His record includes arrests and convictions for carrying a prohibited weapon, possession of a controlled substance, and felony possession of drugs and firearms simultaneously. (3) Defendant has a history of violent behavior. Defendant was a member of the Bloods street gang and, at the time of his arrest, told officers he was connected to MS-13. Additionally, Defendant has charges and convictions for making terroristic threats, damage to property, domestic battery, and aggravated assault. (4) Defendant has a history of substance abuse. While Defendant declined to provide information related to substance abuse, his criminal history contains multiple arrests for possession of a controlled substance. Moreover, Defendant's brother reports he has used illegal drugs for the past several years. (5) Defendant has a history of failing to comply with pretrial supervision and engaging in criminal activity while on bond.

*Id*. Mr. Harris has previously appealed to the undersigned to reconsider the detention order. (Docs. 19, 29, 40, 112, among others). The motions to reconsider were denied. (Docs. 22, 30, 41, 114, among others). Mr. Harris has previously appealed detention to the district judge. (Doc. 102). Accordingly, Mr. Harris's motion to revoke detention order should be denied.

## C. Defendant's Objection to Report and Recommendation Regarding Suppression Should Be Overruled

Mr. Harris objects to the Report and Recommendation regarding evidence suppression. (Doc. 159). His motion, however, is captioned as a "Motion Pro Se for Writ of Error Coram Nobis." A person who has been convicted of a federal crime and is no longer in federal custody may seek a writ of error *coram nobis* to set aside the conviction and sentence. *United States v. Morgan*, 346 U.S. 502, 505–06 (1954); *United States v. Little*, 608 F.2d 296, 299 (8th Cir. 1979). *Coram nobis* relief is "substantially equivalent" to post-conviction relief under 28 U.S.C. § 2255. *Id*. The main difference between the two remedies is that *coram nobis* relief is available when the defendant is no longer in custody, whereas custody is a prerequisite for § 2255 relief. *Id.*; *United*

*States v. Camacho-Bordes*, 94 F.3d 1168, 1172 n.6 (8th Cir. 1996). Given that Mr. Harris is a pretrial detainee, the Court will construe this matter as an objection to the Report and Recommendation regarding evidence suppression. (Doc. 131).

In his suppression motion, Mr. Harris moves for an order suppressing his statements to Officer Thomas and Deputy Bonner while at the hotel, and his statement to Officer Pratt that the Kia belonged to him. He claims these incriminating statements were obtained in violation of his constitutional rights because he was so intoxicated that he could not "adequately, voluntarily, knowingly, and intelligently" waive his *Miranda* rights. (Doc. 118). For the reasons set forth in the Report and Recommendation (Doc. 131), the Court found Mr. Harris's arguments unavailing and recommends his general objection be overruled.

### III. Conclusion

First, IT IS RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order DENYING Defendant Harris's motion to dismiss indictment. (Doc. 155).

Second, IT IS RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order DENYING Defendant Harris's motion to revoke detention. (Doc. 155).

Third, IT IS RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order OVERRULING Defendant Harris's objection to the Report and Recommendation regarding evidence suppression. (Doc. 159).

Counsel and Mr. Harris are reminded that each party has fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings

in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 12th day of March, 2021, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge