IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 19-CR-4088-BCW-01 |
| ) | |
| ANTHONY MARTINEZ HARRIS, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Pending before the Court are *pro se* Defendant Anthony Martinez Harris's (1) motion to suppress statements, (2) motion to suppress evidence, and (3) motion to dismiss indictment due to alleged Speedy Trial Act violations. (Docs. 196, 197). For the reasons that follow, it is recommended that the motions be DENIED.

## I. Background

An indictment was filed by a federal grand jury on November 13, 2019, charging Mr. Harris with possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count One), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two). (Doc. 1). The charges in this case arose from the Defendant's arrest at the Sleep Inn hotel in Camdenton, Missouri, on September 26, 2019.

On December 10, 2020, an evidentiary hearing was held on Mr. Harris's motion to suppress statements.[1] (Doc. 130). He was represented by appointed counsel, John M. Roodhouse. The

---

[1] While the December 10, 2020 hearing focused primarily on Mr. Harris's motion to suppress statements, testimony was elicited that is germane to the April 12, 2020 motion to suppress physical evidence.

Government was represented by Special Assistant United States Attorney Aaron M. Jolly. The Government called as witnesses Nicolas Thomas of the Camdenton, Missouri Police Department; Brian Bonner of the Lebanon, Missouri Police Department; and Bryan Pratt, a Task Force Officer with the Lake Area Narcotics Enforcement Group. Mr. Harris called no witnesses to testify.

On December 14, 2020, the undersigned recommended Mr. Harris's first motion to suppress statements be denied. (Doc. 131). The Court, after making an independent review of the record and applicable law, and for the reasons stated in the Report and Recommendation, denied Mr. Harris's first motion to suppress statements. (Doc. 189).

On April 12, 2021, Mr. Harris, now *pro se*, filed a second motion to suppress statements (Doc. 196), motion to suppress evidence (Doc. 197), and motion to dismiss indictment due to alleged Speedy Trial Act violations (Doc. 197). On April 13, 2021, the Court held a pretrial hearing, in part, to clarify Defendant's requests.

## II. Findings of Fact

On the basis of the evidence adduced at the evidentiary hearing and pretrial hearing, the undersigned submits the following proposed findings of fact:

1. On September 26, 2019, Camdenton police officer Nick Thomas responded to the Sleep Inn at the request of hotel staff to help remove a hotel guest from the property. (Doc. 130 at 6:5-20). Upon Officer Thomas's arrival, the hotel owner reported that Anthony Harris had been uncooperative in vacating the property after being asked to do so by staff members who could smell the odor of marijuana coming from his room. (Doc. 130 at 6:23-7:5). The owner escorted Officer Thomas to the fourth floor where hotel staff and Mr. Harris were standing in the hallway outside his hotel room. (Doc. 130 at 7:8-15). Officer Thomas testified that he informed Mr. Harris, in accordance with the owner's wishes, that he needed to collect his belongings and

leave the premises. (Doc. 130 at 7:18-20). But because Mr. Harris's keycard to his room had been deactivated, housekeeping staff had to let him into the room to collect his belongings. (Doc. 130 at 8:3-6).

2. When housekeeping staff propped open the door, Officer Thomas saw in plain sight money scattered across the bed and a white powdery substance on the coffee table. (Doc. 130 at 8:8-14). Accordingly, Officer Thomas detained Mr. Harris and called for backup. (Doc. 130 at 8:12-17). Officer Thomas said he then read Mr. Harris his *Miranda* rights. (Doc. 130 at 8:17). Before Officer Thomas could say anything further, Mr. Harris offered him $50,000 to basically allow him to walk away and let him go. (Doc. 130 at 9:16-17). Mr. Harris told him that he was involved with the "cartel" and "MS-13." (Doc. 130 at 9:19-20).

3. Brian Bonner of the Lebanon, Missouri Police Department was the first back-up officer to arrive, followed by Lieutenant Beecham shortly after him. (Doc. 130 at 10:3-5). Deputy Bonner testified that he and the other officers had a brief conversation in the hallway about how to proceed. (Doc. 130 at 10:5-6). Deputy Bonner spoke with Mr. Harris and asked him what was in the room. (Doc. 130 at 10:6-8). Mr. Harris told Deputy Bonner that there were methamphetamine, cocaine, heroin, and PCP in his hotel room. (Doc. 130 at 10:8-9).

4. After Mr. Harris advised Deputy Bonner there were multiple kinds of narcotics in the room, Deputy Bonner asked Mr. Harris if police could enter the room and search. (Doc. 130 at 11:1-4). According to Deputy Bonner's testimony, Mr. Harris gave the officers permission to search. (Doc. 130 at 11:4). During the search of the room, Officer Thomas found a large quantity of controlled substances, a set of scales,

and some drug paraphernalia. (Doc. 130 at 11:11-12). Officer Thomas then picked up a clay-like object that was covered in a bandana. (Doc. 130 at 11:12-14). As the officer was inspecting the object, Mr. Harris said, "That's C-4." (Doc. 130 at 11:14-21). The officers immediately exited the room and began evacuating the hotel while Officer Thomas escorted Mr. Harris to his patrol car and transferred him to the Camden County Jail to be placed on a 24-hour hold. (Doc. 130 at 12:1-3). The hotel remained unoccupied until the building was declared safe by the explosives ordinance team. (Doc. 6).

5. Area Narcotics Group Task Force Officer Brian Pratt arrived at the hotel shortly after Officer Thomas transported Mr. Harris to the jail. (Doc. 130 at 36:2-5). He discovered that a key to a Kia found in Mr. Harris's pocket matched a Kia located in the hotel parking lot. (Doc. 130 at 36:8-14). Officer Pratt investigated the Kia and confirmed that it had been reported stolen by the Kansas City, Missouri Police Department. *Id.* Officer Pratt then conducted searches of Mr. Harris's hotel room and the Kia, pursuant to state-court warrants, finding contraband in both. (Doc. 130 at 36:17-22). The searches yielded 756 grams of crystal methamphetamine, approximately 581 ecstasy pills, and lesser quantities of heroin, cocaine, and PCP. (Doc. 130 at 35:18-22); (Doc. 6). Also, the searches revealed three handguns, a .223 semi-automatic rifle, ammunition, various drug paraphernalia, and $11,259 in U.S. currency. (Doc. 130 at 19:14-21); (Doc. 6).

6. Officer Pratt then met with Mr. Harris in the booking area of the jail sometime in the late evening to provide him with a copy of the search warrants and the search warrant inventory forms. (Doc. 130 at 36:19-22, 40:3-4). Officer Pratt began

the conversation by advising Mr. Harris of his *Miranda* rights. (Doc. 130 at 37:1-3). Although Mr. Harris initially indicated he wanted to speak with Officer Pratt, Mr. Harris kept going "back and forth" on whether he wanted to waive his rights. (Doc. 130 at 37:5-7, 37:19-22). Because Mr. Harris would not give a straight answer, Officer Pratt did not ask Mr. Harris any questions, instead telling Mr. Harris that the car keys found in his pocket belonged to a car that had been reported stolen. (Doc. 130 at 37:8-12). Mr. Harris responded that he did not understand why it had been reported stolen because it was his car. (Doc. 130 at 37:12-14).

7. After hearing testimony from the officers involved in investigating and arresting Mr. Harris, the Court found all officers credible. (Doc. 131 at 3).

8. On April 12, 2021, Mr. Harris filed what the Court construes as a motion to suppress evidence. (Doc. 197). At the pretrial hearing, in further support of his motion, Mr. Harris stated, "Well, the evidence that -- there's evidence that I guess the prosecution was using currently in this case was obtained without a warrant. There was no consent. There was no exigent circumstances. And then the -- the police reports show this." (Doc. 201 at 7:16-20). When asked if he had any additional evidence to prove his point, Mr. Harris replied, "Yes. I got it. It's in the police reports, Your Honor. It's in the police report, the Camden County Police report is signed by Judge Cochrane at seven o'clock at night or 6:56 at night. This incident took effect at two o'clock in the afternoon. This warrant is signed at seven o'clock. When Tim Garrison got there -- I mean, when the officer that wrote it got there, he was going on hearsay information, Your Honor. All of this is in the record. The prosecution has failed to

offer it to you. All my defense counsel, past defense counsel has failed to offer this to the courts. It's all those records. And video." (Doc. 201 at 9:1-8).

9. Mr. Harris requested in writing to exclude "756 grams of methamphetamine." (Doc. 197). When asked at the pretrial hearing if he wanted the Court to exclude any other evidence, he replied, "Well, yes. I mean, I'm looking to exclude all physical -- all the physical evidence, all the drugs and the statements and everything." (Doc. 201 at 11:18-20). When asked if he had any proof to present on said claim, he stated, "Yes, sir. I have the Camden County Police report." (Doc. 201 at 12:16-17).

### III. Discussion

Mr. Harris seeks to suppress "information" obtained by "interrogation" when he did not have counsel.[2] (Doc. 196). He moves to suppress evidence of "756 grams of methamphetamine," weapons, PCP, and cocaine. (Doc. 197). He moves to dismiss the indictment due to alleged Speedy Trial Act violations.

**A. Unidentified Statements Should Not Be Suppressed**

Mr. Harris's second motion to suppress statements is captioned as "Motion Pro Se For Objection to use of information gain from a interrogation without counsel." (Doc. 196). Defendant states that he was transported, post-indictment, from Camden County Jail to the United States Court House in Jefferson City, Missouri by Timothy A. Garrison,[3] who he calls the "District Attorney." *Id*. He further states that Mr. Garrison was "unprofessional," and had a "reckless disregard of Federal Rules of Laws and Regulations." *Id*. He states, "the basis for the objection:

---

[2] The Court construes as a second motion to suppress statements.
[3] Timothy A. Garrison served as United States Attorney for the Western District of Missouri from 2018 to 2021. There is no evidence in the record to support Mr. Harris's suggestion that the United States Attorney, himself, met, spoke to, or traveled with Mr. Harris.

(1) defendant was a member of the Bloods Street gang, (2) defendant has a history of substance abuse, (3) defendant has a extensive criminal history."

"[*Miranda*] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." *United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). Accordingly, *Miranda* warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda*, 384 U.S. at 444). "Interrogation under *Miranda* includes not only express questioning but also its functional equivalent, such as 'any word or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *United States v. Hull*, 419 F.3d 762, 767 (8th Cir. 2005)(quoting *Rhode Island v. Innis*, 466 U.S. 291, 300–01 (1980)).

Here, Mr. Harris fails to allege any violation of his *Miranda* rights. He fails to identify specific statements made. Even if he were to identify specific statements, the Court finds no basis to suppress any statements the Defendant has made. The alleged statements made by Defendant, post-indictment, have not been placed into issue in this case. Finally, the Court has previously examined statements made by Mr. Harris that are relevant to this pending case and found statements attributed to him should not be suppressed. (Docs. 131, 189).

### B. Evidence of Drugs and Guns Should Not Be Suppressed

Mr. Harris's motion to suppress evidence is captioned as "Motion Pro Se Challenging US of Evidence Obtain Without a Warrant" and "Motion Pro Se For Violation of the Federal 4th

Amendment." (Doc. 197). Defendant contends "that warrantless arrest and search violated the Federal Constitution Fourth Amendment, even though the officers may have had probable cause to obtain a warrant." *Id*.

A warrantless arrest by law enforcement officers is reasonable where there is probable cause to believe that someone has committed a crime. *See United States v. Winarske*, 715 F.3d 1063, 1066 (8th Cir. 2013), cert. denied, 572 U.S. 1003 (2014). The *Winarske* court stated:

> Arresting officers are not required to witness actual criminal activity or have collected enough evidence so as to justify a conviction for there to be a legitimate finding of probable cause to justify a warrantless arrest. *United States v. Webster*, 625 F.3d 439, 442 (8th Cir. 2010). Instead, the mere "probability or substantial chance of criminal activity, rather than an actual showing of criminal activity," is all that is required. *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005). In making a probable cause determination, "[l]aw enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Henderson*, 613 F.3d 1177, 1181 (8th Cir. 2010) (internal quotation omitted).

715 F.3d at 1067.

In the instant case, Camdenton police officer Nick Thomas was called to the Sleep Inn at the request of hotel staff to help remove Mr. Harris, a hotel guest, from the property. When Officer Thomas encountered Mr. Harris on the fourth floor of the hotel, he asked Mr. Harris to collect his belongings and leave the premises. (Fact No. 1). As housekeeping staff propped open the door to let Mr. Harris back into his room, Officer Thomas saw in plain sight money scattered across the bed and a white powdery substance on the coffee table. (Fact No. 2). Accordingly, Officer Thomas detained Mr. Harris, called for backup, and read Mr. Harris his *Miranda* rights. (Fact No 2). Before Officer Thomas could say anything further, Mr. Harris offered him $50,000 to let him go free while claiming he was involved with the "cartel" and "MS-13." (Fact No. 2).

Deputy Brian Bonner of the Lebanon Police Department was the first back-up officer to arrive and asked Mr. Harris what was in his room. (Fact No. 3). Mr. Harris told Deputy Bonner

that methamphetamine, cocaine, heroin, and PCP were in his hotel room. (Fact No. 3). Deputy Bonner then asked to enter the room to search and received Mr. Harris's permission. (Fact No. 4). During the search of the room, Officer Thomas found a large quantity of controlled substances, a set of scales, and some drug paraphernalia. (Fact No. 4). Soon thereafter, Mr. Harris was transferred to the Camden County Jail and placed on a 24-hour hold. (Fact No. 4).

Area Narcotics Group Task Force Officer Brian Pratt discovered that a key to a Kia found in Mr. Harris's pocket matched a Kia located in the hotel parking lot. He investigated the Kia and confirmed that it had been reported stolen by the Kansas City, Missouri Police Department. Officer Pratt then conducted searches of Mr. Harris's hotel room and the Kia, pursuant to state-court warrants, finding contraband in both. (Fact No. 5). The searches yielded 756 grams of crystal methamphetamine, approximately 581 ecstasy pills, and lesser quantities of heroin, cocaine, and PCP. (Fact No. 5). Also, the searches revealed three handguns, a .223 semi-automatic rifle, ammunition, various drug paraphernalia, and $11,259 in U.S. currency. (Fact No. 5). Officer Pratt then met with Mr. Harris in the booking area of the jail sometime in the late evening to provide him with a copy of the search warrants and the search warrant inventory forms. (Fact No. 6). Officer Pratt began the conversation by advising Mr. Harris of his *Miranda* rights, but did not ask Mr. Harris any questions, instead telling him that the car keys found in his pocket belonged to a car that had been reported stolen. (Fact No. 6). Mr. Harris responded that he did not understand why it had been reported stolen because it was his car. (Fact No. 6).

The Court finds that these facts would lead a reasonable person to believe that a crime had been committed and that Mr. Harris had committed it. Therefore, the Court concludes that law enforcement officers had probable cause to effectuate a warrantless arrest. The search of the hotel room was valid as a search incident to a lawful arrest. Further, the search of the room and car

pursuant to state search warrants was valid. Defendant's motion to suppress evidence must be denied. (Doc. 197).

### C. This Case Should Not Be Dismissed as There is No Speedy Trial Act Problem

The next issue is Mr. Harris's "Motion Pro Se For Speedy Trial Act Violation." He asserts "the time between arrest and initial appearance" was 56 days. (Doc. 197). The Court has previously interpreted this very same motion as an alleged violation of Federal Rule of Criminal Procedure 5(a)(1)(A). (Docs. 168, 191). The Court denied this very motion on April 9, 2021, and should do so again for the reasons stated below and in the previous Report and Recommendation (Doc. 168).

To the extent, this motion is construed as asserting a pure Speedy Trial[4] violation, Mr. Harris's time clock computation is as follows. He was arrested on November 21, 2019, and arraigned on November 22, 2019. (Docs. 5, 8). The case was initially set on the January 6, 2020 trial docket and at the request of Defendant continued to the February 10, 2020 trial docket. (Doc. 8). Subsequent motions to continue were filed by the Defendant on January 14, 2020, continuing the matter to June 1, 2020 (Docs. 17, 18); March 23, 2020, continuing matter to July 6, 2020 (Docs. 27, 28); and June 5, 2020, continuing matter to March 22, 2021 (Docs. 62, 67). On February 23, 2021, the Court continued the case to the May 3, 2021 trial docket pursuant to the February 1, 2021 General Order continuing all jury trials until the May 3, 2021 criminal trial docket. (Doc. 152). In computing the 70 day time period, the periods of delay set forth in 18 U.S.C. § 3161(h) are to be excluded. Any period of delay resulting from a continuance granted at the request of a defendant is excludable if the Court finds the ends of justice served by the taking of such action

---

[4] In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. 18 U.S.C. § 3161(c)(1).

outweigh the best interests of the public and the defendant in a speedy trial, provided the Court sets forth the reasons for such findings pursuant to 18 U.S.C § 3161(h)(7)(A). Accordingly, Mr. Harris' trial clock currently is set to expire July 23, 2021, 70 days from the last day of the May 3, 2021 trial docket. Given there is no problem with Mr. Harris's trial clock, his motion should be denied.

## IV . Conclusion

First, IT IS RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order DENYING Defendant Harris's second motion to suppress statements.

Second, IT IS RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order DENYING Defendant Harris's motion to suppress evidence.

Third, IT IS RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order DENYING Defendant Harris's motion to dismiss indictment due to alleged Speedy Trial Act violations.

Counsel and Mr. Harris are reminded that each party has five (5) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections.[5] A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

---

[5] By agreement of the parties at the pretrial conference held on April 13, 2021, the objection period was shortened from fourteen (14) days to five (5) days. The parties desire to try this case on the May 3, 2021 trial docket and do not want a delay because of pending motions.

Dated this 13th day of April, 2021, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*
Willie J. Epps, Jr.
United States Magistrate Judge