IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-CR-4088-BCW-01 |
| | ) | |
| ANTHONY MARTINEZ HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

On November 13, 2019, the Grand Jury returned an indictment against defendant Anthony Martinez Harris, charging him with possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count One), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two). (Doc. 1). The charges in this case arose from the Defendant's arrest at the Sleep Inn hotel in Camdenton, Missouri, on September 26, 2019.

On April 15, 2021, the Court conducted a Status Conference to discuss witnesses to be subpoenaed for trial set on the May 3, 2021 joint criminal trial docket. (Doc. 206). Mr. Harris, now proceeding *pro se*, appeared via video teleconference along with standby counsel, John M. Roodhouse. For the United States, Jim Lynn, an Assistant United States Attorney, appeared by video teleconference as well.

Based on information provided and arguments made during the Status Conference, including whether former United States Attorney Timothy Garrison participated in transporting Mr. Harris after his arrest, concerns arose regarding Mr. Harris's current competency to proceed.

> THE COURT: What would you do if the Court did issue a subpoena later today for Mr. Garrison?

> MR. LYNN: Move to quash and file a motion in limine. And I do think, Your Honor, I do think it raises some issues related to, honestly, his competency. I mean, if he's convinced that Tim Garrison transported him, I think there's some issues there.
>
> THE COURT: Okay. Tell me more, Mr. Lynn.
>
> MR. LYNN: Well, I mean, if he truly believes that Mr. Garrison was driving that van, which he was not, and I mean, that is possibly a delusion and it would call into question his ability to understand the proceedings and assist in his defense. And Mr. Roodhouse and I had a conversation about this as well and he may be able to weigh in.

(Doc. 207 at 8:19-9:7). The concerns voiced by the United States were amplified by Mr. Roodhouse, standby counsel.

> THE COURT: Mr. Roodhouse, I know you're the fifth attorney on this case and none so far have raised mental competency. Do you suspect there's a mental competency issue here?
>
> MR. ROODHOUSE: Judge, I do suspect that. And, in fact, I spoke with Mr. Harris today and he has actually voiced a desire to meet with a psychiatrist. He said that he's suffering from some very disturbing nightmares, and then Mr. Harris can certainly speak for himself on that as well. But I kind of thought that we might broach this subject today in a hearing and I explained that to Mr. Harris. And he did not seem opposed to the idea of a meeting with a psychiatrist, understanding that that would be for a competency evaluation.

(Doc. 207 at 9:8-20). Further, during the April 15, 2021 Status Conference, Mr. Harris made an oral motion for the Court to conduct a mental competency evaluation.

> THE COURT: Mr. Harris, do you concur with your stand-by counsel?
>
> MR. HARRIS: In part. I concur that I would recommend and would like a psych eval, but at the same time, Your Honor, on the Tim Garrison, on November 21st, '19, somebody -- I got into the federal state building in Jeff City is where I went to, somebody had to show ID to get through that state building to bring me in there. So, it's on video record that the person I was talking to that I pulled my paperwork out at the elevator before I met Erik Zumdome coming down on the elevator, it's all recorded from that date, Your Honor, on federal grounds. That's all I have, but I would like a psych eval because this has been unbearing to me, just to keep going through all this.

(Doc. 207 at 9:21-10:8).  Therefore, the Court believes an examination of Mr. Harris, pursuant to 18 U.S.C. § 4241, is necessary to determine whether he is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

The Court notes again that Mr. Harris, who proceeds *pro se*, orally moved for the mental evaluation.  Counsel for the United States and standby counsel, Mr. Roodhouse, did not have an objection to the Court granting Mr. Harris's request.

Based on the foregoing, it is

ORDERED that defendant Anthony Martinez Harris is committed to the custody of the Attorney General, and the United States Marshal's Service is directed to transfer Mr. Harris to a suitable facility, if necessary, to undergo an examination to determine whether Mr. Harris is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.  It is further

ORDERED that the psychiatric or psychological evaluation be completed within 30 days (or within 30 days after Defendant's arrival at an appropriate facility if a transfer was necessary) and a report be filed with the Court within 21 days after the evaluation.  It is further

ORDERED that the agency providing the evaluation may apply for an extension upon a showing of good cause, pursuant to 18 U.S.C. § 4247(b).

Dated this 15th day of April, 2021, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*
Willie J. Epps, Jr.
United States Magistrate Judge